The next case on our argument calendar is Dorsey v. United States, but we'll give counsel time to make their exits. Good morning, your honors. Good morning. This case is set with 10 minutes for each side. And so again, if appellant wants to make a battle, please try to stop before it's done. Thank you, your honor. Good morning, and may it please the court. My name is Matthew Robinson on behalf of the appellant Devon Dorsey. Mr. Dorsey stands convicted of federal witness tampering statute in violation 18 U. S. Code section 1512 A to A and also use of a firearm during a crime of violence. He contested in his habeas petition to the court that the underlying crime of witness tampering that he was convicted of is not a crime of violence, and therefore the conviction under 924 C for using a which is what we look through in addressing this, because as addressed in the briefs, the statute is divisible. We're going to a modified approach, categorical approach to look to the charging documents, the jury verdict, and the jury instructions to determine whether or not the acts the crime that Mr Dorsey was convicted of constitutes a crime of violence in light of Borden and Taylor and in light of all the Supreme Court decisions over the years addressing this unique issue. Here, the jury was instructed on two theories. One was the intent to kill the use of physical force against the witness to effectuate the witness tampering. Under theory one, the jury was instructed on two elements, whether those elements were simply this, the intent to kill, kill and the substantial step beyond mere preparation. The jury did not distinguish between these, whether or not it was a use of force or an attempted killing. So we're ambiguous there, but under either theory, this is not a crime of violence. The jury was under theory one attempted killing. The jury was not required to determine whether or not the substantial step toward committing the offense required the use, attempted use or threatened use of force. And the jury was not also required to find and did not find that the attempt to kill constituted attempted murder or attempted manslaughter or some other type of killing. How can you attempt to kill without having it be one of those things? Well, because there's many different variations of killing. Right. You can negligently kill someone, but if you're attempting to do it, you're not doing it negligently. So I don't understand that argument. Well, it's the attempt goes back to the Taylor case. And whatever an attempt may be, it doesn't require the use of force. So you can attempt to kill somebody without the use of violent force. You can have that intention without ever acting in a violent manner. The jury was not required to find that element. And, you know, they were required to find a substantial step and not mere solicitation or preparation. Correct. Correct. Right. And the substantial step was not defined. The jury was not instructed on these, what it would take to to require a crime of violence, as my point. And they probably wouldn't have been instructed on this because Borden Taylor didn't exist at the time. And I think this issue could be simply fixed by jury instructions and jury findings. But here, the jury did not make these findings. And because the jury was not instructed as such and maybe as the government points out in its brief, the jury had the jury been instructed on these these elements, maybe the jury could have found guilt. Maybe there's enough evidence there to support a finding on these. But that's after the fact. I'm a little confused about what are you saying the jury should have done because aren't we just looking categorically at the crime? I don't know what I'm looking. I'm excuse me for interrupting. No, I'm just confused. Why aren't we just comparing the definitions of the crimes? Why are you talking about what the jury what what the jury would find? Because we've gone to the modified categorical approach because we're dealing with a divisible statute. We're dealing with a general verdict. So we're not sure exactly what crime the jury found him, what acts the jury found beyond a reasonable doubt. But we would look at the jury instructions, maybe. Right. That's correct. Yeah, that's correct. And the jury wasn't instructed to make these findings and therefore the jury didn't make these findings. And therefore, the jury did not make all the findings necessary beyond a reasonable doubt for the elements of the 924 C offense. It's a very simple argument when it when you boil it down. How is this case different from Stud Horse in your view, which was under Washington law, but held that there's that if the federal law has an element, the intentional use, threatened use or attempted use of physical force against a person that made attempted first degree murder a crime of violence. How is that result different here? Because we're not dealing with attempted first degree murder, I suppose, the first dealing with attempted killing. Yes, ma'am. Yes, you're on. So you think Stud Horse would have come out differently if it had been a different level of killing? I do believe that because under Borden, you you cannot you can commit many killings recklessly. But attempt requires an intent. Yes, the attempt part does require the the intent. But then when you roll Taylor into that mix, the intent act, the intent to commit an act doesn't require purposeful force. It just requires the intent. If you're looking at attempted crimes. So, you know, rolling when you when you look at Taylor and Borden together, let's see if I can find out here. Taylor was not. If you if you look at Borden and Taylor together, you first see that the crime has to be intentional under the problem is that Taylor was about robbery, though. And maybe robbery has steps that don't involve hurting someone. But murder is about hurting someone and killing them. So I'm not sure how you're using this robbery point to get to your attempt. And murder isn't about hurting someone. It's because there was never a finding of murder. There's an there's a finding of an attempted killing which can which could there's no statute defined. There's you know, we're not dealing with manslaughter. We're not sure if it's manslaughter. We don't not sure if it's second degree murder. We're not sure if it's attempted first degree murder, except we are sure that because the district court made a finding that sentencing under preponderance of the evidence that the first degree murder enhancement did not apply. So if it's not first degree murder, what is it? It's an intentional killing a killing. I don't know. Attempted killing the the intent to have someone killed doesn't require purposeful force and violent force. How can you have someone killed without force? The it's difficult to imagine that your honor. I concede that point. However, you can intend to have someone killed. You can take a substantial step towards that without any violent purposeful force. And that's what makes the offense a crime of violence under Taylor. I see. I have two minutes left for rebuttal. Unless the court would like to ask me another question, I would reserve the remainder. Thank you. Thank you, your honors. Good morning, your honors. May it please the court. Michael Morgan for the United States. I'd like to just clear up a couple of things. One doesn't matter what the jury found. This is a categorical question. It's a question of law for the court. The jury was not required to make any findings about whether this was a any whether as a factual matter. This was a crime of violence. That's a legal question and it's answered by looking at the elements of the offense. So we can just put the jury's verdict to one side. What we do know is what the jury was instructed and they were instructed under two theories. Attempting to kill the witness as an obstruction and using physical force as an obstruction. Due to the way the jury was instructed and the general verdict that was reached under this court's Reid decision, it's even if you want to find that one theory was invalid, as long as there's a valid theory, the verdict stands. And there clearly is one valid theory and that's the attempted killing theory for the reasons that the court seems to have grasped. An attempted killing necessarily involves intent. Sorry, can you back up for a second? If we can't tell which one they did, why don't they both need to be valid? Well, that's what this court decided in Reid because we're on we're on habeas. And so to prevail, he's got to show that this error was harmful. And under Brecht, it has to have had a substantial and injurious effect on the verdict. And Reid holds that if two theories are submitted, one of which is invalid, one of which is valid, as long as the theories are inextricably intertwined such that the jury had to have rested its verdict on both. But these aren't, are they? You could have done one or the other without them being intertwined. Oh, not on the facts of the case. Well, yeah, but we don't look at the facts of the case, right? We look at the categorical crime. No, for harmlessness, of course, you look at the facts of the case. Harmlessness, that's harmless error. So that. OK, so how are they intertwined? Because they both arose from the same acts. The defendant shot the victim, and no rational jury could find that he shot the victim intending to kill her, but not causing physical injury, or that he shot the victim intending to cause physical injury, but didn't attempt to kill her because he shot her twice in the chest with life-threatening wounds. So the two theories are factually intertwined, which is what Reid says is the relevant inquiry for harmlessness. That's just in terms of, like, if you're going to look at the two theories and you're going to decide one is invalid, it's just whether or not you can sustain the verdict. And there's clearly, the government's position is that both theories are valid, but there's clearly one theory that's valid, and that's the attempted murder theory. An attempt necessarily requires an intentional act, an intent to kill, and killing necessarily involves physical force. And whether or not actual physical force occurred in the case doesn't matter, because the statute defines a crime of violence as an attempt. An attempt, by definition, is not going to have actual resulting physical force. So in an attempt case, if an attempt crime is, in fact, a crime of violence, you look to the completed crime about whether or not there would be sufficient physical force, but the attempt crime itself doesn't have to involve physical force, because that's, again, the definition of an attempt. So the completed crime here, killing, obviously involves physical force. The attempt involves the requisite intent. So attempted killing is a crime of violence under... I guess I'm a little confused if these are so intertwined why both instructions were needed. Well, were they both needed? No, but he was indicted under both theories. And the government routinely submits alternative theories to the jury, because one never knows what a jury is going to do. But the idea is that they must not be... I mean, you wouldn't give the exact same instruction twice, right? So there must be some difference. It's a little inconsistent to give both instructions, but then say, basically, the jury had to believe them both, if they're going to believe one of them. I mean, I can't... A rational jury would have to convict on both. I think that's true. I think a rational jury on these facts would have to convict on both. We don't always have rational juries as a practical matter, and that's why alternative theories are submitted. It's also interesting in this case that the defense was alibi. So it's like you're either going to get a straight acquittal or you're going to get a conviction on both, just about the nature of this case. But legally, there's no problem with submitting alternative theories to the jury, even if they literally arise out of the same core of facts and you really couldn't logically find one and not the other. It seems to me that in Reed, they were more distinct than they are here. One was a theory about Hobbs Act robbery, and one was a theory about drug trafficking, which are a little bit less related. And they're even slightly less related than that, Your Honor, because they were conspiracies. It was conspiracy to commit Hobbs Act robbery and conspiracy to do drug trafficking. It just so happens that the Hobbs Act robbery and the drug trafficking were part and parcel of the same overarching criminal enterprise, such that, again, the conspiracies were that interrelated. But here, it's even more, again, it's even more interrelated because it's literally a single act that violated two different statutes. So you can't, it's hard to imagine a more interrelated case than the one we have. Counsel, I have a question for you on theory, because of the comment that we don't always have rational juries. Does it matter if a jury is rational? Well, of course not, Your Honor. I mean, which is why we have, you know, juries return inconsistent verdicts all the time. And that does not render any one particular verdict invalid just because a jury, for whatever reason, I shouldn't say that we don't have rational juries. Juries can acquit for any reason that they choose to. I mean, they have that power. Whether or not they should under the law is a different issue. But they can and they do. But the fact that a jury is capable of returning an inconsistent verdict doesn't somehow mean that the government is precluded from offering two different theories to the jury that a logical, rational jury could not accept one and not the other, which is the case here. Thank you. Could you speak a little bit about the, whether confinement requires force? Yes. So that's theory two, and that's the physical force. The statute requires, you know, physical force against another. And then 1515A provides a definition of physical force, which is physical action, which includes confinement. We know that confinement is within the subset of physical action because it includes confinement. So the confinement has to be accomplished by physical action. So confinement by coercion or duress or trickery or something along those lines wouldn't count. So we know that you have to physically confine the individual. But why does that not make the confinement surplusage? I mean, if it requires physical force, then it just requires physical force and you didn't need the thing that says, and this includes in confinement. Well, I, there's, there's a, the real answer, which is that it's in, you have to look at the nature of the statute, which is that it's a witness tampering statute. And you want to make sure that, like, I'm squirreling away a witness without, you know, physically beating them, is within the scope of the statute. But it still involves physical force within the meaning of Johnson, the Supreme Court's Johnson decision and the Supreme Court's Castleman decision. Because the force, as Castleman tells us, doesn't have to be directed directly to the individual. If you, you can use an indirect use of force against the person. And that's what confinement does. Since the confinement has to be accomplished by some physical action, as opposed to, again, duress or coercion, there must be some physical force directed to overcome the victim's ability to leave. And that's sufficient force under Johnson, or at least that's the government's position. And that's the position that the panel just took in the Stuker decision. So that's why it involves physical force. The confinement element doesn't render the physical force overbroad because the physical force must be directed toward the individual to prevent their resistance to the confinement, which, under a Stokeling-type rationale, is going to be sufficient physical force. And locking a door would be enough? Yes, locking a door would be enough. Because, again, it would overcome, be sufficient force to overcome resistance to the confinement. And so we would analogize to, like, the robbery, which is, you know, any force to overcome resistance to the taking, no matter how minor, is going to be sufficient. So, you know, just the force of, you know, a handbag, you know, chain being pulled is going to be sufficient. So to a locked door that you can't, that will resist your force to open is sufficient physical force to qualify under the statute. Is there any inquiry about whether someone is likely to get injured because of the force? I... In a robbery, you're, like, actually pulling something from someone's arm or hand or wallet or pocket or whatever. Here, you might lock a door 50 feet from the person. Does it matter? It doesn't matter because that's, I mean, there's no requirement that, I mean, that's what Stokeling makes quite clear, is that while we talk about violent force, the force required isn't really that violent. I mean, it doesn't, it has to be more than de minimis, more than a mere touching, but it doesn't have to be sufficient to cause an injury. I mean, a slap is sufficient force. Hair pulling is sufficient force. So we're not really talking about that much force. And again, we're talking about the force not about causing an injury, but force to overcome resistance. That's analogous to the robbery, right? The, you don't have to be injured from the, you know, the amount of force to overcome your resistance does not have to be sufficient force to cause injury, but it's still sufficient force to qualify under the statute. So under that type of a reasoning, the amount of force used in the physical action definition is sufficient. Unless the court has any further questions? I don't. I would ask that judgment be affirmed. Thank you. Thank you. May it please the court, and I will pick up with Your Honor's question concerning the second theory, as to physical force. And you're, it's absolutely correct, Your Honor, the lack of jury finding with respect to the, and when I say jury finding and lack of jury instructions and finding with respect to the element of physical force, with respect to theory two, is troubling. And it's troubling because physical force is uniquely defined for this particular statute under 15, 15A, as counsel indicated. And that includes, you know, confinement, which as Your Honor pointed out, could be accomplished through the mere locking of a door. That's certainly not the type of violent physical force, purposeful force that's required under Johnson in 2010's decision. So we would submit that under that, under the second theory as well, it just simply cannot be a crime of violence. Why wouldn't we think someone might hurt themselves trying to bang the door down or something like that? Well, whether or not someone might hurt themselves is, I mean, that almost goes back to the residual clause, which has been found unconstitutional, whether or not the offense, you know, otherwise could have resulted in harm or violence. And that simply is not part of the analysis anymore. Another thing that's not part of the analysis is what actually happened at trial. I know it's counterintuitive, but it's true. You know, we're looking at the elements of the offense and we're looking at... I think you're opposing counsel, right, that Reed looked at the facts of the case to figure out the harmlessness? With respect to the Reed case and the harmless analysis, I respectfully disagree. When we're dealing with the elements of the offense and a general verdict, especially when we're dealing with a habeas petition, where we're looking at retroactive cases on collateral review, you know, we can't look to harm the issue as to harmlessness as if this was a direct appeal issue. Harmlessness might be the wrong word, but what the jury would have found with the two instructions. That's... Reed did look at that on the facts of that case. And I believe, just to add to that question, if I may, I thought that there was a general verdict in Reed as well. I don't believe there was a separate verdict on the two theories. You're correct. With respect to the Reed case, there was a general verdict and that was the point of the decision. However, this case is completely distinguishable based upon the two theories and the lack of instructions on either. We're completely dealing with facts that we're trying to, you know, take from the actual trial and then apply it in a categorical approach or a modified categorical approach and it's simply not allowed. So, with that, I would ask that the district court's decision be vacated and that this matter be remanded so that Mr. Dorsey's 924C conviction can also be vacated. Thank you very much. Thank you. Okay, the Dorsey case will now be submitted and I thank counsel for their vigorous arguments.
judges: GRABER, GOULD, FRIEDLAND